In the Matter of JAMES JACKSON, Appellant, v EDWARD R. HAMMOCK, as Chairman of the New York State Board of Parole, Respondent. — Appeal by petitioner from a judgment of the Supreme Court, Nassau County (Pittoni, J.), entered October 17, 1980, which dismissed his petition seeking, *inter alia,* to cancel the declaration of delinquency against him. Judgment reversed, on the law, without costs or disbursements, petition granted, with prejudice, to the extent that the declaration of delinquency is canceled and the warrant is vacated. On June 23, 1978 petitioner was sentenced to concurrent terms of imprisonment of two to four years upon his convictions of robbery in the third degree and attempted robbery in the third degree, and of one year upon his conviction of grand larceny in the third degree. He was "conditionally released" on September 19, 1979. On December 6, 1979 he was arrested for larceny, and on December 17, 1979 a warrant for his detention as an alleged parole violator was served upon him. At the end of the preliminary hearing, held on its rescheduled date of January 10, 1980, the hearing officer found probable cause to believe that petitioner had violated the conditions of his parole. On February 22, 1980 the State Division of Parole sent petitioner's counsel (Legal Aid Society) notice that a final revocation hearing was scheduled for 10:30 A.M. on March 11, 1980 at the Nassau County Jail. However, when a Legal Aid attorney appeared that day to represent petitioner, he was informed by correction officers that petitioner had been transferred to the Ossining Correctional Facility. On March 11, and again on March 18, the Legal Aid attorney sent a letter to petitioner addressed to the facility at Ossining. The first one was returned with a notation that he was no longer there. A letter was then set by the attorney to the Department of Correctional Services, which responded that petitioner had been released on September 19, 1979 (the date on which he had been "conditionally released"). Finally, on April 23, 1980, in response to a second letter from the attorney as to petitioner's whereabouts, the former was advised that petitioner was located at the Clinton Correctional Reception Center in Dannemora, New York. The attorney then sent a letter, dated May 2, 1980, to petitioner at the Clinton facility. In a letter dated May 16, petitioner advised the attorney that he had written him twice while he was in the facility at Clinton and not having received an answer, he proceeded to a final revocation hearing on April 14, without counsel, on the advice of a parole officer. The final revocation hearing date of April 14 was 95 days after petitioner had received his preliminary revocation hearing. The record also reveals that on April 3, 1980, petitioner executed a printed document in which it was recited that he waived his right to an attorney, that he was ready to proceed to his final revocation hearing, and that he understood he would be advised of the time, date and place of the "Final Violation Hearing" at least seven days before such hearing. On April 15, 1980, a day after the final revocation hearing was held at the Clinton facility, the respondent Parole Board issued a decision notice which contained no findings of fact, but simply sustained the parole violations, revoked petitioner's parole, and directed that the time assessed be governed by petitioner's "new sentence." In denying petitioner's application, *inter alia,* to cancel his parole delinquency and to vacate the warrant, on the ground, *inter alia,* that the final revocation hearing was not held within 90 days of the probable cause determination (see

Executive Law, § 259-i, subd 3, par [f], cl [i]), Special Term held that any delay was unintentional, and that while petitioner was in the Nassau County Jail on another charge, he was not in the custody of the Parole Board. We disagree with such determination. First, contrary to Special Term's finding, petitioner, while incarcerated at the local jail, was within the convenience and practical control of the respondent board (see *People ex rel. Walsh v Vincent*, 40 NY2d 1049, 1050; cf. *Matter of Higgins v New York State Div. of Parole*, 72 AD2d 583). Such control is evidenced by the fact that the board initially scheduled the final revocation hearing to be held at the local jail. We also disagree with Special Term's excusing the delay by the Parole Board in rescheduling and conducting the final revocation hearing after the expiration of the 90-day statutory period on the ground that such delay was "unintentional". The respondent board knew or should have known that petitioner had been transferred to a State facility before March 11. However, it evidently took no steps to reschedule the final revocation hearing until April 3, 1980, just six days before the expiration of the 90-day statutory period. On that date petitioner was advised by a parole officer to sign the document containing the waiver of counsel and the consent to a seven-day notice of the final hearing. The law is settled that a delay beyond 90 days after the probable cause determination is unreasonable unless the exceptions provided in the statute are applicable *(People ex rel. Levy v Dalsheim,* 66 AD2d 827). It is true that petitioner, while incarcerated at the Clinton facility, and acting upon the advice of a parole officer, did execute the document waiving his right to have his attorney present at the rescheduled hearing and consenting to such hearing on seven-days notice, all without advice of counsel. However, under the circumstances we believe that such action on his part constituted neither an effective waiver of counsel (cf. *People v Hobson,* 39 NY2d 479), nor a bona fide request or consent by him that the statutory 90-day time limit for the holding of the final revocation hearing be extended (Executive Law, § 259-i, subd 3, par [f], cl [i]). We also conclude that the action of the board in rescheduling the final revocation hearing for April 14 contravened the statutory requirement that "[b]oth the alleged violator and an attorney who has filed a notice of appearance on his behalf *** shall be given written notice of the date, place and time of the hearing as soon as possible *but at least fourteen days prior to the scheduled date"* (Executive Law, § 259-i, subd 3, par [f], cl [iii] [emphasis added]; *People ex rel. Goodman v Smith,* 73 AD2d 800). Finally, although not crucial to our determination, the written statement issued by the board revoking petitioner's parole did not adequately comply with the statutory mandate that such statement indicate "the evidence relied upon and the reasons for revoking or recommending the revocation of parole" (Executive Law, § 259-i, subd 3, par [f], cl [xi]). Since petitioner is presently in a State correctional facility under sentence for an unrelated crime, he may not be released on parole. Titone, J. P., Lazer, Weinstein and Thompson, JJ., concur.